# Devine's Estate.

*Will—Absolute devise—Reduction of estate—Rule in Shelley's Case.*

Testator devised certain real estate to his daughter E. L., at the death of her mother. He also made similar devises of real estate to other daughters. In a subsequent clause in his will he directed as follows: "It is my will that neither of my children shall sell or convey any part of the real estate hereby willed to them, but shall receive the rents, issues and profits thereof during their natural lives, and after their or either of their deaths, their portions shall be equally divided among their children and their heirs; and if either of my children should die without issue, their portion shall be equally divided among the survivors." After the death of the testator, a daughter, E. A., instituted proceedings which had for their purpose the construction of the will, and obtained a decision in Williams v. Leech, 4 Casey, 89, and Naglee's Appeal, 9 Casey, 89, that she took an estate in fee simple under her father's will. Upon E. L.'s death, E. A. claimed to share in the proceeds of the real estate devised to E. L., on the ground that E. L. took a life estate only on the theory that Guthrie's Appeal, 1 Wright, 9, had overruled William v. Leech and Naglee's Appeal. *Held,* that the fund should be awarded to the representatives of E. L.

Argued March 26, 1901. Appeal, Nos. 343, Jan. T., 1900, and Nos. 7 and 37, Jan. T., 1901, by George W. Williams et al., from decree of O. C. Phila. Co., April T., 1899, No. 318, dismissing exceptions to adjudication in the estate of Elizabeth L. Devine, deceased. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

The adjudicating judge, PENROSE, after disposing of payments of legacies and annuities under the will of Elizabeth L.

Devine, said, as to the fund which is the subject of these appeals, as follows:

At the time of her death the decedent held the sum of $6,643.50, received by her under the following circumstances:

Henry Naglee, the father of the decedent, by his will, proved in 1838, gave his estate, real and personal, to his wife, Mary E. Naglee, for life, and at her death gave to his daughter, Margaret C., certain real estate there described; to his daughter Elizabeth L. (the present decedent) certain other real estate; to his daughter Emily A., certain other real estate; and to his daughter Caroline S., certain other real estate.

Following these gifts it was thus provided: "It is my will that when my father and mother's estate is divided among their heirs that my part or share thereof be equally divided among my four children or the survivors of them part and share alike. And it is my will that in case of the demise of my said wife before my two daughters, Emily Anna and Caroline Smith, arrive at the age of twenty-one years there shall be guardians legally appointed to take charge of their estates until they attain that age.

"Item. It is my will that neither of my children shall sell or convey any part of the real estate hereby willed to them, but shall receive the rents, issues and profits thereof during their natural lives and after their or either of their deaths their portion shall be equally divided among their children and their heirs, and if either of my children should die without issue their portion shall be equally divided among the survivors."

The will appointed the wife sole executrix, and gave her power to sell his real estate in New Jersey and his ground rents and interest in certain lots in Locust ward, giving her power also to let on ground rent the lot on Coates street and the lot on Germantown road "for the benefit of my two daughters Emily Anna and Caroline Smith." A codicil gave power to the executrix to sell all his property on Greenwich Island (which the will gave to Margaret and Elizabeth) at her discretion, "and vesting the proceeds thereof in some other real estate or stock, and that she . . . . shall receive the income thereof during her natural life, and at her death the said property shall be divided between my two daughters, Margaret C. and Elizabeth L.,

share and share alike, so that my said daughters, Margaret C. and Elizabeth L. may receive the rents, profits and issues of the same, but they shall not have the privilege to sell or convey the same."

The daughters all married : Margaret C. Naglee to James P. Bruner; Elizabeth L. Naglee to Mark Devine; Emily A. Naglee to George F. Williams ; and Caroline S. Naglee to Henry J. Smaltz.

Mrs. Williams, who had had three children, all of whom died without issue, in 1854, sold part of the property so devised to her to Charles Leech, for $200, and afterwards filed a bill in equity against him, joining her sisters and such of their children as were then in being, alleging the refusal of the purchaser to accept title, and asking that it might be decreed that she " was seized of an indefeasible title in fee simple, subject to the interest of the widow for life, and the right and interest of any after born child or children," and asking also for a decree of specific performance against the purchaser according to the contract.

The decree asked for was granted by the Supreme Court, and in the opinion delivered by LOWRIE, J., it was said, inter alia: " This will comes under the act of 1833, and it gives to the testator's daughter, Mrs. Williams, an absolute estate in this land, by the devising clause, and the only question—does the clause afterwards inserted, which declares that she shall not sell the land, but merely receive the income of it during her life, and leave it to be equally divided among her children and their heirs, or in default of issue, among the survivors of the testator's children—does this clause reduce the estate to a life estate ?

" To us it seems to be merely the very commonly manifested purpose to restrain children in their use of their land, being rather a paternal than a legal restraint. The limitations over are not inconsistent with a fee, as it seems to us, for they are limitations to the heirs of the devisee, first to the lineal heirs, and second to the collateral heirs ; that is, all together, to her heirs general. But the cause is presented on another ground, assuming that there is a life estate in Mrs. Williams with remainder to her children. Then, following the usual form of such devises, this one may be stated thus : A devise to Emily

for life, with remainder to her issue and their heirs, in equal shares (she being unmarried) ; and if she die without issue, then over to her surviving sisters (who would be her collateral heirs). Of course, the remainder to the children was contingent, until at least one of them was born. But then it became immediately vested, and for this counsel have cited many cases, and there are numerous others, . . . . and when it once becomes vested in the children, it is transmissible as theirs, and this is clearly expressed in many cases ; . . . . the devise over is to take effect only in case the first remainder should not. . . . . If the first remainder once vests, it must in this case vest in fee, and descend as such, for there is nothing to divest it in favor of another estate. . . . It may be thought unreasonable that the devise over should be defeated by the birth of children who may have died within a few months ; but we are only following the testator's law of descent, and not making one. Besides, it is quite as reasonable that the mother should succeed in title to her children, as that their aunts should. . . . This land vested in the children, on their birth, and descended on their death to their parent, but subject to open again to let in the right of other children, when born, for their shares ; and the devise over fell entirely, never to rise again. . . .

" We think, however, that the devises over are mere devises to the heirs of the first taker, and that, therefore, Mrs. Williams has a perfect fee simple title."

From the smallness of the sum in controversy and the fact that the other daughters of the testator and their children, so far as at that time there were any, were made parties—especially in view of the great eminence of counsel engaged—it is evident that the real purpose of the proceeding was to have the will construed and the title taken by the daughters judicially determined.

The case is reported in 4 Casey, 89. It was followed by another proceeding by Mrs. Williams to compel the conveyance to her of certain ground rents reserved under the provisions of the will of her father, reported in Naglee's Appeal, 9 Casey, 89, where the decree asked for was granted. It was then said by LOWRIE, C. J.: " When we had this will up before, we expressed our opinion that under her father's will Mrs. Williams took a fee simple in the land devised to her. . . . We still think

so. The principal devising clause gives her a fee simple expressly. How is this reduced to a life estate? Certainly not by the direction that she shall not sell or convey; for this is a void restraint upon an absolute title, as we showed before.

" But the will adds, that she shall receive the rents during her life, and after her death her portion shall be ' equally divided ' among her children and their heirs ; and if she die without issue it shall be ' equally divided ' among the survivors of his children.

" This is not inconsistent with the fee granted before, for it provides only for a division of the estate among her heirs on her death, for the word 'survivors' of her sisters, includes the children of a sister not surviving. It therefore gives her an estate of inheritance according to the intestate act, first to her issue, and second to her collateral heirs on the side of the testator."

It is admitted that after these decisions besides conveyances on ground rent made by the executrix under the power given by the will, and a conveyance by Mr. and Mrs. Smaltz, with joinder of their children, who were minors, under a decree of the orphans' court, a deed was made by Mr. and Mrs. Smaltz, in May, 1882, to the Pennsylvania Railroad in fee of part of the land so devised to her.

In May, 1883, Mrs. Devine having received an offer from the Pennsylvania Railroad Company for part of the land given to her by the will and codicil, for $6,643.50, a petition by her and her husband, Mark Devine, was presented to the court, setting forth the provisions of the will of her father, Henry Naglee, and of the codicil, and asking that a sale be made for the price offered ; and the other persons taking under the will having been brought in by citation, and the master to whom the application was referred having reported that the sale was an advantageous one, a decree was entered March 29, 1884, permitting the petitioners to make the sale, upon their giving " bond to the commonwealth in the sum of $14,000, conditioned for the faithful execution of this decree, and for the proper application of all purchase moneys received pursuant hereto."

Notwithstanding the construction given to the will of Henry

Naglee in the cases above referred to, and the acts of the parties in pursuance of it, it is now said that Mrs. Devine's right to the purchase moneys so received ceased at her death; that Williams v. Leech and Naglee's Appeal were overruled by Guthrie's Appeal, 1 Wright, 9; and that in the very proceeding under which the sale was made, the master, whose report was confirmed by the court, decided that Mrs. Devine had but a life estate. Mr. Johnson, therefore, on behalf of Mrs. Williams, claimed the entire amount, she being the sole "survivor;" while Mr. Smaltz, contending that the word "survivors" was used by the testator in the sense of "others," asked that it should be awarded accordingly.

It was stated that Mrs. Bruner died in 1866, leaving a husband, who has since died, and six children, Henry W. Bruner, James S. Bruner, F. Herbert Bruner, Willard Bruner, Louis W. Bruner and Meta W. Bruner; and that Mrs. Smaltz died in 1886, leaving a husband, who has since died, leaving three children, Mary L. Nichols, Katharine Mortimoore, and Henry N. Smaltz. No claim was presented on behalf of Mrs. Bruner's children.

With regard to the report of the master it is enough to say that he was appointed solely to determine the question as to the advisability of the sale, and what he said with regard to the estate of Mrs. Devine was extrajudicial. The proceeding was no doubt suggested by the purchaser.

It is often said that Williams v. Leech and Naglee's Appeal were "overruled by Guthrie's Appeal," but this is not the fact. It is true that Judge STRONG, in Guthrie's Appeal, refers to some things said by Judge LOWRIE in Williams v. Leech and in Naglee's Appeal, which were not in accordance with his own views, but the only point decided, and the only question presented for consideration, was that an estate expressly limited to the first taker for life, was not enlarged by operation of the rule in Shelley's Case by a limitation to his children, as Judge LOWRIE had suggested, in Price v. Taylor, 4 Casey, 95, it might be, if the first taker were unmarried at the time of the gift, and as was actually decided in McKee v. McKinley, 9 Casey, 92.

What was decided in Williams v. Leech was that an absolute gift was not cut down by subsequent words which did not show

unequivocally an intention to reduce the estate—a principle settled by numerous authorities: Williams on Executors, 221, Kiver v. Oldfield, 4 DeG. and J. 30; Reichard's Appeal, 1 Crum. 232; Whelen's Estate, 175 Pa. 23. There was no limitation of the estate, in express terms, to the lives of the daughters, and the attempt to take away the power of alienation so far as their shares of real estate were concerned, was simply void (Reifsnyder v. Hunter, 7 Harris, 41), while the limitation at the deaths of the daughters to those who would take their estates under the intestate laws, was, as the court held, consistent with the absolute estates given in the first instance. It is certainly clear that the interests given in so much of the estate as was personalty were absolute, and the gifts of the real estate were in the same terms. The codicil, which contains the final expression of the testator's intentions as to the lands given to Mrs. Devine on Greenwich Island, part of which was the subject of the sale to the Pennsylvania Railroad Company, expressly declares that if they should be sold by his wife the proceeds at her death should go absolutely to Mrs. Devine and Mrs. Bruner in equal shares; and it is only in the event of their not being sold by the wife that the daughters, who are to " receive the rents, issues and profits," without limitation as to time, are not to " have the privilege to sell and convey the same."

It is true that Judge AGNEW, in Dodson v. Ball, 10 P. F. Smith, 495, refers to Williams v. Leech and Naglee's Appeal as having been " overthrown " by Guthrie's Appeal, but as he classes these cases with Kuhn v. Newman and other cases which followed it on questions of trusts, and as no question of trust was involved in either of them, it is evident that he was not speaking with his usual care and accuracy. Dodson v. Ball, it may be remarked in passing, is the only case, so far as known, in which a fee was held to have passed under a deed without the use of the word " heirs "—the distinction between a deed and a will in this respect having apparently been overlooked.

If, however, it be conceded that these cases have been, in principle, at least, overruled, and that they are not authority on questions of title so far as strangers are concerned, it by no means follows that the parties, and especially Mrs. Williams,

can disregard them.   Upon this point many authorities were cited by Mr. Michener, to which may be added Menges v. Dentler, 9 Casey, 495, and Bolton v. Hey, 168 Pa. 418.

In Bolton v. Hey, where the subject was elaborately considered by Chief Justice STERRETT, it was said "that judgment thus became the law of the case, and having never been reversed or set aside, it is still the law of that case, notwithstanding a different rule of construction may have since been applied, with a different result, to contracts of like tenor and effect.   As was said by Mr. Justice KENNEDY, in Marsh v. Pier, 4 Rawle, 273, 289, the 'judgment of a proper court, being a sentence or conclusion of law upon the facts contained in the record,' puts an end to all further litigation on account of the same matter, and becomes the law of the case, which cannot be changed or altered even by consent of the parties, and is not only binding upon them, but upon courts and juries ever afterwards, as long as it shall remain in force and unreversed.   This case has since been cited with approval in Brenner v. Moyer, 98 Pa. 278, and elsewhere."   But irrespective of the effect of the decision invoked by Mrs. Williams, the daughters who asserted that the proper construction of the will gave them a fee, and, acting on this assertion, made conveyances of their shares in whole or in part, are clearly estopped, as against her sisters, from now asserting the contrary.   This applies to Mrs. Williams now claiming the whole of Mrs. Devine's share as sole "survivor" of the daughters and also to Mrs. Smaltz and those deriving title under her, if "survivors" is the equivalent of "others," as in the opinion of the auditing judge it is under the authority of many decisions: Lapsley v. Lapsley, 9 Barr, 130 ; 4 Kent, 202, note c. ; Sterling's Estate, 24 W. N. C. 495.

If "survivors" is to be so understood and Mrs. Devine had but a life estate, the other sisters had vested interests in remainder subject to be divested by the birth of children, an event which did not happen ; and Mrs. Smaltz's children taking as they necessarily do by descent from her, are bound by her acts just as she would have been if living and equally estopped by them.   Her children do not take as purchasers of the share which she would become entitled to at the death of Mrs. Devine ; shares so accruing are not subject to the restric-

tions, if any legally existed, which applied to the original shares: Theobald on Wills, 368; Masden's Estate, 4 Whart. 441.

The claims of Mrs. Williams and of the children of Mrs. Smaltz are disallowed.

Exceptions to the adjudication were dismissed by the court.

*Error assigned* was in dismissing exceptions to adjudication.

*John G. Johnson*, with him *Henry N. Smaltz*, for appellants. —Mrs. Devine was seized of a life estate only in the Greenwich Island property: Guthrie's App., 37 Pa. 10; Dodson v. Ball, 60 Pa. 495; Cote v. Von Bonnhorst, 41 Pa. 243; Curtis v. Longstreth, 44 Pa. 297; Sheets's Est., 52 Pa. 257; Carroll v. Burns, 108 Pa. 386; Giffin's Est., 138 Pa. 327; Nes v. Ramsay, 155 Pa. 628; Urich's App., 86 Pa. 386.

The extent of the right, title and interest of Mrs. Devine in the Greenwich Island property was never the subject of litigation, and was never decided by this court.

In order that a judgment in one action shall be conclusive in another, it must appear with convenient certainty that the question in controversy was litigated and decided in the first; and to be conclusive, the record must show the very matter claimed to have been passed upon which is claimed to be concluded: Williams v. Row, 62 Pa. 118; Andrews v. Denison, 16 N. H. 469; Cavanaugh v. Buehler, 120 Pa. 457; Tams v. Lewis, 42 Pa. 410; Head v. Meloney, 111 Pa. 104; Menges v. Dentler, 33 Pa. 495; Jones v. Vert, 121 Ind. 142; Orr v. Mercer County Mut. Fire Ins. Co., 114 Pa. 387; Gandy v. Gandy, L. R. 30 Ch. Div. 58.

*Ovid F. Johnson*, for appellants, J. Stanley Bruner et al.

*E. O. Michener*, for appellee.—The question involved in this appeal is res adjudicata: In re May, L. R. 28 Ch. Div. 518; Outram v. Morewood, 3 East, 346; In re Bank of Hindustan, China & Japan, 22 W. Repr. 118; Spencer v. Spencer, 40 L. J. Prob. 45; Bower v. Tallman, 5 W. & S. 556; Morrill v. Morrill, 11 L. R. A. 155; Orr v. Mercer County

Mut. Fire Ins. Co., 114 Pa. 387; Shelbe v. Strong, 128 Pa. 315; Chouteau v. Gibson, 76 Mo. 38; Bolton v. Hey, 168 Pa. 418.

OPINION BY MR. JUSTICE FELL, April 29, 1901:

The majority of the court are of opinion that all of the decrees appealed from should be affirmed on the opinion of the learned auditing judge.

The decrees are affirmed.