## Chew's Estate.

*Res adjudicata—How far adjudication of one account is conclusive upon the audit of subsequent accounts—Law of case.*

1. A decree of the Orphans' Court, based upon an award of distribution pursuant thereto, no appeal having been taken and no review granted, is *res adjudicata* in so far as the rights of the parties and their privies are concerned, not merely as to the principal of the fund and accrued income, which was the subject of the decree, but also as to the income thereafter accruing on the fund in the hands of the trustees and included in a subsequent account.

2. Hence, where a clause of the will has been construed by the court in favor of the construction claimed by one of the distributees, and distribution of income made in accordance with that construction, the distributee's executor, being in privity with the distributee, cannot maintain a different construction of the will from that adopted by the court in the lifetime of his decedent where his claim relates to income accruing after the distributee's death from the same share of principal which had been before the court in the former proceeding.

Exceptions to adjudication.   O. C. Phila. Co., July T., 1878, No. 228.

*Frederick J. Knaus,* for exceptant.

*Saul, Ewing, Remick & Saul* and *Howard McMorris, Carlyle H. Ross* and *Evans, Bayard & Frick,* contra.

HENDERSON, J., Dec. 14, 1921.—Joseph Chew, Sr., died in December, 1868, having first made his will, which was thereafter duly proven, by which he directed, subject to the payment of a small weekly sum to his son, that the residuary estate should be held in trust, to pay one-fourth of the net income to his son, Joseph Chew, Jr.; one-fourth to his daughter, Emily C. Jeffries; one-fourth to his daughter, Agnes Eareckson, and the remaining one-fourth among the six grandchildren named in his will, "during their respective lives."

Emily C. Jeffries, one of the children of Joseph Chew, Sr., died Jan. 23, 1882, leaving to survive her three children, Grace C. Burger, Kate Rose and Caroline Berry.  Kate Rose died May 3, 1885, leaving to survive her two sons, William M. and Robert J. Rose.  Caroline Berry died July 25, 1903, leaving no issue, but a will, which was duly proven, by which she gave her whole estate to her husband, whom she appointed executor, and to whom letters were granted.

The death of Caroline Berry was the occasion for the filing of an account in the estate of Joseph Chew, Sr., which was audited by Judge Ashman.  The trust then before the court for construction arose, as stated by Judge Ashman in his adjudication, "under the residuary clause in the testator's will, by which he gave his residuary estate to certain trustees in trust, to pay one-fourth of the net income to each of his children, Joseph Chew, Jr., Agnes C. Eareckson and Emily C. Jeffries, and one-fourth to his grandchildren," as therein named, "equally during their respective lives, and on the death of any life-tenant to pay their share to their respective children until all the life-tenants shall be dead, and then to allot to the children and issue, *per stirpes,* of each deceased life-tenant the principal sum of their parent's share."

At the time of the audit, in 1903, Emily C. Jeffries was dead, having died in 1882, and there were living as representing her share, her daughter, Grace C. Burger;  William M. and Robert J. Rose, the children of another daughter, Kate Rose, who died in 1885, and the remaining daughter, Caroline Berry, had also died, leaving a will by which she appointed her husband executor.

The question then before the court for determination was, what became of the income from the trust which theretofore had been payable to Caroline Berry.  Grace C. Burger was present, claiming the one-quarter of the income which had been originally left to Emily C. Jeffries, her mother;  the executor

Chew's Estate.

of Caroline Berry does not appear to have been present; and the two sons of Kate Rose claimed one-half of the income from the Caroline Berry share, because they were the children of Kate Rose, the sister. Judge Ashman awarded the share of the income of Caroline Berry, which had accrued to the time of her death, to her husband as executor of her will, and that which accrued subsequently to her decease to her living sister, Grace C. Burger, one-half, and the remaining one-half equally to the two sons of her deceased sister, Kate Rose.

Exceptions were filed to the adjudication by Grace C. Burger, on the ground that the entire income should have been awarded to her as the surviving child of Emily C. Jeffries. These exceptions were dismissed in an opinion by Judge Ferguson, and the adjudication confirmed absolutely. It will be noted that in the distribution as made, as above recited, no share of the subsequently accruing income was awarded to the husband-legatee-executor under the will of Caroline Berry. This interpretation of the will by Judge Ashman, confirmed by the court *in banc*, established a course of action which continued without objection from any party in interest for a period of eighteen years.

It is contended that the construction, as established by this court, and unappealed from, became the law of the case. If it did, that is an end of the matter. The question whether it became the law of the case depends on whether the fund and the parties before the court are the same.

It is admitted that the principal fund before the court is the same, but that it is a new income, and for that reason the parties have a right to be heard. This precise question arose in May's Estate, 25 Dist. R. 608, wherein this court said, speaking by Judge Gest: "But while the principal of the estate in this account remains the same, the income accounted for has, of course, been subsequently received, and it is argued that the previous decrees are not now binding upon the court, according to the doctrine just now mentioned, inasmuch as the income now distributable is in that sense a different fund. The prior decision was that the income then in the hands of the trustee passed under the intestate laws until the death of Mary E. Mulliken, and the award of principal made to the trustees was, of course, for the purposes of the trust as in said adjudication determined. At the prior audits the exceptants were represented by counsel, and it would seem to us that they should be concluded by the decision then rendered, the exceptions having been dismissed by the court *in banc*, not only as to every question that was then and there raised, but every question that should or might have been raised by the distribution directed by the adjudication. If this is not so, there would be nothing to prevent the parties from disputing these questions over and over again whenever the trustees receive additional income, thus causing complexity, annoyance and uncertainty to the trustees and all parties."

There yet remains for consideration the question as to whether the parties are the same. At the audit before Judge Ashman, Grace C. Burger appeared by counsel and claimed the whole share of the income which had theretofore been paid to Caroline Berry, probably on the ground that she was the surviving daughter of Emily C. Jeffries. It was possible at that audit for the husband of Caroline Berry, her sole legatee and executor, to have claimed the fund on the theory that Caroline Berry had a vested estate in the income while the trust continued. The court, however, divided the fund equally between Grace C. Burger and the children of her deceased sister, Mrs. Rose. She excepted, and the court *in banc* confirmed the ruling of Judge Ashman.

The question, therefore, presents itself: Can the executor of Grace C. Burger, the exceptant now before the court, claim to be heard on the theory

1 D. & C.

that Grace C. Burger had a vested estate in this income while the trust continued? If the husband of Grace C. Burger was claiming in his own right under the will of Joseph Chew, Sr., then he, not having been a party to the other proceeding, would undoubtedly have had a right to be heard. He, however, has no right under the will of Joseph Chew, Sr., and is merely claiming as the executor of Grace C. Burger the income which he contends was vested in her for the life of the trust, and which, under Judge Ashman's ruling, has, since her death in 1907, been paid to her two sons. He stands in her shoes and is speaking for her; but, as we have seen, she has already been before this court, contending for another construction, and succeeded to the extent that one-half of the income which had been formerly payable to Caroline Berry was awarded to her. She cannot blow hot and cold. As a result of her efforts, she succeeded in having this clause of the will interpreted to her advantage while she lived. If she had a vested interest in this income, she should have said so at that time, and not having said so, neither she nor her executor will now be heard to make such a contention. It makes no difference that Burger, the husband-legatee-executor of Grace C. Burger, was not present at that audit, because he then had no right to be heard. His wife, however, was present, was heard and aided and profited in the determination of the question upon which he now seeks another ruling. See Gould's Estate, 270 Pa. 535; Lafferty's Estate, 209 Pa. 44.

The general principle governing all such cases is well stated in Black's Law of Judicial Precedents, 262: "When a point or question, arising in the course of a litigation, is once solemnly and finally decided, the rule or principle of law announced as applicable to the facts presented becomes the law of that case in all its subsequent stages or developments, and is binding both upon the parties and their privies and also upon the court, so that the former will not be permitted, nor will the latter consent, to reopen the same issues for further consideration, whatever grounds there may be for regarding that decision as erroneous."

It is contended by the exceptant that the action of this court in construing the will upon the death of Caroline Berry, and thereunder awarding her share of the income, should not bind the Grace C. Burger *stirps* in contending for a different construction of the will. Grace C. Burger's executor contends that she had a vested estate in the income for the life of the trust; he is, therefore, speaking for her; but, as we have already seen, she, in her lifetime, contended for a different construction. Devine's Estate, 199 Pa. 250-256, is directly in point. Therein it appeared that there was some doubt as to whether the daughters of the decedent had taken estates in fee, and they secured from our Supreme Court a construction of the will, holding that they took absolute estates in fee simple; thereafter, certain of the daughters made conveyances of their shares; and when another daughter died, the two who had secured a construction from the Supreme Court and who had conveyed their shares, appeared and contended that their sister only had a life estate which should pass to them. Judge Penrose, speaking for the court below, said:

"If, however, it be conceded that these cases have been, in principle, at least, overruled, and that they are not authority on questions of title so far as strangers are concerned, it by no means follows that the parties, and especially Mrs. Williams, can disregard them. Upon this point many authorities were cited by Mr. Michener, to which may be added Menges v. Dentler, 33 Pa. 495, and Bolton v. Hey, 168 Pa. 418.

"In Bolton v. Hey, where the subject was elaborately considered by Chief Justice Sterrett, it was said 'that judgment thus became the law of the case,

Chew's Estate.

and having never been reversed or set aside, it is still the law of that case, notwithstanding a different rule of construction may have since been applied with a different result to contracts of like tenor and effect. As was said by Mr. Justice Kennedy, in Marsh v. Pier, 4 Rawle, 273, 289, the 'judgment of a proper court, being a sentence or conclusion of law upon the facts contained in the record,' puts an end to all further litigation on account of the same matter and becomes the law of the case, which cannot be changed or altered even by consent of the parties, and is not only binding upon them, but upon courts and juries ever afterwards, as long as it shall remain in force and unreversed. This case has since been cited with approval in Brenner v. Moyer, 98 Pa. 278, and elsewhere.' But, irrespective of the effect of the decision invoked by Mrs. Williams, the daughters, who asserted that the proper construction of the will gave them a fee, and, acting on this assertion, made conveyances of their shares in whole or in part, are clearly estopped, as against her sisters, from now asserting the contrary. This applies to Mrs. Williams now claiming the whole of Mrs. Devine's share as sole 'survivor' of the daughters, and also to Mrs. Smaltz and those deriving title under her, if 'survivors' is the equivalent of 'others,' as, in the opinion of the auditing judge, it is under the authority of many decisions: Lapsley v. Lapsley, 9 Barr, 130; 4 Kent, 22, note c; Sterling's Estate, 24 W. N. C. 495."

Summarizing the situation in conclusion, we find that the identical clause of the will for which a new interpretation is now sought by the husband-legatee-executor of Grace C. Burger, was interpreted by Judge Ashman in 1903 upon the death of Caroline Berry, when Grace C. Burger appeared by her counsel and was heard in aid of the construction which gave her one-half of Mrs. Berry's share of the income after her death. Since her decease in 1907, the trustee has paid Mrs. Burger's share of the income to her two sons, in accordance with the ruling of Judge Ashman; if she were here she would not now be heard to contend for another construction, and as she is dead, her privy, her executor, will likewise not be heard on that question. Judge Ashman's ruling is the law of the case.

The exceptions are dismissed and the adjudication is confirmed absolutely.

NOTE.—See Lafferty's Estate, 230 Pa. 496, reversing 19 Dist. R. 504, and Gould's Estate, 270 Pa. 535.