## Smylie's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne, Sinkler, JJ., and Marx, P. J. twenty-third judicial district, auditing judge.

The facts appear from the following extracts from adjudication of

MARX, P. J., twenty-third judicial district, specially presiding, auditing judge. —Mary M. Smylie, who died January 28, 1895, gave the residue of her estate in trust to pay certain annuities, and the annuitants are dead, and after their death

"to pay one-fifth of said income (subject to the annuities aforesaid) to my son, Matthew C. Smylie, during his life, and at his death in equal portions to his widow and children so long as she remains his widow, and upon the marriage or death of his widow then I give, devise and bequeath one-fifth of my residuary estate to the children of my said son Matthew C. Smylie, share and share alike, absolutely.

"To pay one-fifth of said net income (subject as aforesaid) to my daughter Ellie S. Herkness, during her life and at her death I give, devise and bequeath one-fifth of my said residuary estate to her children, share and share alike, absolutely."

She gave directions to pay one fifth of the net income to William D. Smylie, a son, and Robert S. Smylie, a son, for life, similar to that provided for with respect to the son Matthew C. Smylie. She directed that the remaining one fifth of the income should be paid to her daughter, Mary E. Dallett, or so much thereof as might be necessary for her maintenance and support during life, and upon her death she gave one fifth of the residuary estate and any accumulated interest or income arising therefrom to her children, share and share alike, absolutely; and if she died without leaving child or children living, then she gave the one fifth of the residuary estate to her surviving children and the children of such of them as might be deceased, the children of any deceased child taking their parent's share.

She further provided that any money that might have been paid, advanced or given to any or all of her children should not be charged against either or any of them or their respective interest or share of her estate under the will, but should be cancelled and annulled and not claimed by the estate.

By a codicil to her will she provided as follows:

"Whereas, in my said Will I stated that, 'it is my Will that any money that may have been paid, advanced or given to any or all of my children shall not be charged against either or any of them or their respective interests or shares of my estate under this Will, but shall be cancelled and annulled and not claimed

by my estate.' I do hereby annul the same, and do declare that my Will now is that any money that may have been advanced, given or paid on account of any of my children be charged against them and their respective interests or share of my estate, and the principal of the respective share of each of my children shall be so charged, and the income from said principal, so charged shall upon the death of any of my said children, be paid my Trustees, as in my said Will directed. And upon the death of any of my said children, if such deceased child shall leave no widow surviving I give devise and bequeath the principal of their respective shares or interest in my residuary estate to my grand children share and share alike, per capita, except as to the principal of the share or interest of my daughter Mary E. Dallett, which upon her death is to be distributed as directed in my Will."

William D. Smylie died January 7, 1933, leaving to survive him one son, William M. Smylie, and no widow. The question for determination is whether William H. Smylie is entitled to the corpus of the share held in trust for William D. Smylie, or whether it is divisible among all of the surviving grandchildren of textatrix per capita. . . .

As already stated, William D. Smylie left to survive him one child—William M. Smylie. His wife, Sarah A. Smylie, predeceased him. She died November 24, 1931. The one-fifth share of the residuary estate held in trust for William D. Smylie, less advances, was awarded to the trustee by the adjudication filed March 12, 1896.

It is conceded that under the language of the will itself, William M. Smylie would have been entitled to receive the one fifth held in trust for his father, and without any deduction for advances made to his father, but it is contended that the codicil revokes this provision because it provides as follows: "Upon the death of any of my said children, if such deceased child shall leave no widow surviving, I give, devise and bequeath the principal of their respective shares or interest in my residuary estate to my grand children share and share alike, of testatrix per capita. . . .

In Dutton's Estate, 301 Pa. 94, the court said: "The will and codicil must be construed together as one instrument . . . and the latter revokes the former only as far as repugnant thereto . . . or inconsistent therewith. . . . A codicil is rather an addition to than a revocation of the will. . . . 'The rule is well established, that a codicil shall not disturb the dispositions of the original will further than is absolutely necessary for the purpose of giving it effect . . . .' " Other authorities to the same effect are cited: Baugh's Estate, 288 Pa. 308; Sheetz's Appeal, 82 Pa. 213; Ball's Estate, 276 Pa. 299; Schattenberg's Estate, 269 Pa. 90; Mifflin's Estate, 49 Pa. Superior Ct. 605; Phillips' Estate, 1 Dist. R. 311; Ketcham's Estate, 22 Dist. R. 966; Sigel's Estate (No. 1), 213 Pa. 14; Whelen's Estate, 4 Dist. R. 478; Budd's Estate, 2 Dist. R. 148; Pattin v. Scott, 270 Pa. 49; Devine's Estate, 199 Pa. 250; Lafferty's Estate, 230 Pa. 496; Gould's Estate, 270 Pa. 535.

With this principle in mind, let us consider first the condition of the family of testatrix at the time she executed her will. She had 5 children—3 sons and 2 daughters. Her sons were married, and their wives were living. The daughters were also married. She had made advances to each one of her children. By her will she provided that each child should receive the income of a one fifth part of her residuary estate. For some unknown reason she directed that advances made to her children should be ignored in determining the amount of their distributive shares. This, of course, created an inequality among the children.

Testatrix felt that she ought to make some provision for the widow of deceased sons; and hence directed that if a son left his wife surviving the trust should continue for the benefit of the widow and children until the death of the widow. After the death of the widow she gave the corpus of the trust to his child or children, share and share alike.

No provision was made for great-grandchildren. Nor did she provide in express terms that the corpus should be distributed upon the death of a son among his children in the event that said son left no wife to survive him. It needs no argument, however, to demonstrate that she intended the children to take in that event.

In the interim between the execution of the will and of the codicil, testatrix experienced a change of heart with respect to the advances. She came to the conclusion that the advances made to her children should be treated as forming part of the estate, and that there should be deducted from the respective fifths the advances made, and she so provided by the codicil.

But she went further, for she provided:

"And upon the death of any of my said children, if such deceased child shall leave no widow surviving, I give, devise and bequeath the principal of their respective shares or interest in my residuary estate to my grandchildren share and share alike, per capita, except as to the principal of the share or interest of my daughter Mary E. Dallett which upon her death is to be distributed as directed in my Will."

This language is ambiguous. The pertinent question suggests itself, why did she insert this additional language. As already pointed out, testatrix had not in express terms stated what disposition she desired to make of the respective one fifth shares of the corpus given to the sons if any of them died leaving a child or children but no wife surviving. Her intention could be implied, as already indicated, from the language used, that she intended the child or children of the deceased son to take the corpus. It is not unusual in contracts and wills to leave as little as possible to inference and to provide in express terms for that which would otherwise be implied. It is reasonable to infer that she intended to make it plain that the corpus of the estate should not be distributed until the death of the wife, if she survived the husband, and that distribution of the corpus should be made upon the death of the son if he left no wife to survive him.

In the opinion of the auditing judge that was the sole reason for inserting the language above quoted.

This is made more clear when we consider the abnormal result that would ensue if we held that she intended all of the grandchildren should share in the corpus of the fund held in trust for a son if he died leaving a child or children but no wife to survive him, and that the children only of the son who died leaving a wife to survive him should take the corpus of the trust held for their father upon the death of their mother.

Unless the language of the codicil requires such a construction, it should not be adopted.

If the testatrix had used instead of the words "my grandchildren" "all my grandchildren", such a construction would perhaps be unavoidable. She has not used such words. Moreover, the preceding words are "their respective shares or interest". What she had in mind was the child or children of the respective sons.

The words "per capita" do not help in the construction. Under the will the respective children of a child who died took share and share alike. As no pro-

vision was made for the children of a grandchild of testatrix, if he died before the termination of the trust, the words "per capita" merely convey the same thought as is shown by the bill. The grandchildren who are entitled to take share equally. Who these grandchildren are must be determined from all the relevent language of the will and codicil.

The auditing judge is of the opinion, and so rules, that testatrix intended that the children of a deceased cestui que trust should take their parent's share irrespective of whether the cestui que trust left a wife surviving or not; that the absence or presence of a widow was immaterial except as it affected the time of distribution of the corpus; that she intended the corpus should be distributed at the death of the widow of the deceased cestui que trust and, if he left no wife surviving, that it should be distributed upon his death; and that testatrix used the words "per capita" to exclude the idea of representation. . . .

*Ralph B. Evans* and *Raymond M. Remick,* for exceptants.

*John F. Headly* and *C. Brewster Rhoads,* contra.

GEST, J., June 30, 1933.—The general principles governing the construction of codicils are well known; the difficulty arises in their application to particular cases. If it is hazardous to draft a will, it is doubly hazardous to draft a codicil, for the draftsman of a codicil does not make a fresh start, with a clean slate; he must write something to be read in connection with what has already been done.

We have given careful consideration to this case and the able arguments presented by counsel and are of opinion that the auditing judge arrived at the correct solution of the problem raised by this ambiguous codicil. The learned counsel for the exceptants frankly admit that the construction for which they content would lead to great inequality in the distribution of the estate, and this is apparent. For if the wife of William M. Smylie had happened to survive him, there could be no doubt that his son, William D. Smylie, would be entitled to one half of the income during his mother's life and to the entire principal upon her death. She, however, happened to predecease her husband, William M. Smylie, and we are now urged to decree that by what was a purely accidental circumstance he received not the whole but only one tenth of his father's share.

Of course, if the codicil clearly showed that this was the intention of the testatrix the conclusion would be unavoidable, but the clear analysis of the will and codicil contained in the adjudication convinces us that this was not her intention. Without repeating all that the auditing judge has so well said, we observe especially that the testatrix in the codicil uses the words "my grandchildren" and not "all my grandchildren", and this in connection with the reference to the "respective shares" of the children of the testatrix indicates that the testatrix had in mind their respective children, who were of course her own grandchildren.

And further it is important to ascertain, first, the dominant scheme of the will considered by itself (and this is very clear), and, second, the dominant intention of the testatrix in making changes in the will. And it appears with equal clearness that this was in order to equalize distribution among her children by charging her advances to them against their respective shares and not to effect an unequal distribution among her children's children.

The exceptions are dismissed and the adjudication is confirmed absolutely.